IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>IAN PATRICK STEWART,<br><br>  Defendant. | Case No. 1:25-cr-00126<br><br>**UNITED STATES' NOTICE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)** |

    The United States of America, by Jennifer Klemetsrud Puhl, Acting United States Attorney for the District of North Dakota, and Jonathan J. O'Konek, Assistant United States Attorney, hereby provides notice, under Federal Rule of Evidence 404(b), of its intent to offer evidence of the defendant's prior threats and violent acts toward public officials, private individuals, law enforcement officers, and judges. At trial, pursuant to Rule 404(b), the United States intends to introduce the defendant's bad acts for the purpose of establishing:

    1) his intent, motive, and plan to threaten Former United States President Barack Obama, T.O., T.C., and J.E., as alleged in Counts Five through Eight of the Indictment; and

    2) his intent, motive, plan, and preparation to: a) enter the Fort Union Trading Post National Historic Site with the intent to commit a crime therein; b) damage or destroy property of the Fort Union Trading Post National Historic Site; c) place D.M. and Williams County Sheriff's Office law enforcement in fear of their safety as alleged in Counts One through Eight of the Indictment.

Specifically, at trial, the United States intends to introduce evidence supporting that the defendant made the following threats or committed the following violent acts:

- On or about September 23, 2024, the defendant attempted to punch a Washington State Patrol Trooper after crashing his vehicle on Interstate 90. During this encounter, the defendant reportedly told the trooper, "He was going to rip [his] face off," and threw objects at law enforcement officers. The United States incorporates by reference the discovery documents pertaining to this incident. Bates Numbers 167-81; 631-54; and 798-800.

- On or about October 10, 2024, the defendant threatened to kill Kittitas County, Washington, Judge Candace Hooper, by stating that he would shoot her with a bow and—when law enforcement from the Ellensburg Police Department (EPD) attempted to arrest the defendant—he barricaded himself in his hotel room. On or about October 11, 2024, when EPD officers again attempted to arrest the defendant, he threatened to slit an officer's throat, threatened to kill the officer with a knife, and had three knives located on his person. Thereafter, for approximately two hours, the defendant attempted to escape from EPD and other law enforcement officers through fields, trees, and the Yakima River. The United States incorporates by reference the information contained within the Ellensburg Police Department, CLE Elum Police Department, and Kittitas County Sheriff's Office documents located in discovery. Bates Numbers 122-35; 547-87; and 772-97.

- On or about April 25, 2025, the defendant threatened to kill United States District Court Judge James Boasberg, United States District Court for the District of Columbia. The United States incorporates by reference the information contained within discovery, which the defendant posted on the social media site X, and was obtained by the United States Marshals Service. Bates Numbers 804-14.

- Between on or about May 9-11, 2025, the defendant walked into Williston City Hall and attempted to leave a backpack therein. Additionally, a Williston Police Officer located the defendant outside of the courthouse during the weekend and the defendant informed the officer that he wanted to take a tour of the courthouse. The United States incorporates by reference the City of Williston Police Department documents located in discovery. Bates Numbers 182-85.

- On or about May 12, 2025, the defendant travelled to the Mandan, Hidatsa, and Arikara (MHA) Emergency Operations Center (EOC) and tried to open the front lobby door. Thereafter, the defendant "jumped on the front passenger side-step of the SWAT vehicle and tried the door, then went around the vehicle and to the front, looking underneath the vehicle." When an MHA EOC protection specialist met with the defendant and asked him to leave, the defendant became confrontational and stated, "I am not going to leave, I am going to walk around and check things out because it is open to the people by taxpayer dollars." Later, the defendant also stated, "You want to know who the fuck I am, I am a Veteran and if I don't want to leave, I have the right not to. You're a real bitch, I don't

3

have to talk to you." The United States incorporates by reference the information contained within the MHA EOC Incident Report. Bates Numbers 154-56.

3) In addition to demonstrating the defendant's intent, motive, and plan to threaten the individuals listed within the Indictment, the defendant's aforementioned bad acts are also admissible: a) to prove that the defendant made "true threats;" b) that the defendant "had some understanding of his statements' threatening character," and c) that he acted with a mens rea of "recklessness" as the Supreme Court held was sufficient in Counterman v. Colorando. 600 U.S. 66, 73 (2023). Additionally, at trial—as the District Court will instruct the jury—the defendant's prior threatening and violent behavior is admissible for the jury to determine whether the defendant's threatening communications about President Obama, T.O., T.C., and J.E. were "true threats." Specifically, at trial, the District Court will instruct the jury:

> In determining whether the defendant's communication was sent for the purpose of issuing a true threat, you may consider all the circumstances surrounding the making of the communication. For example, you may consider the language, specificity, and frequency of the threats; the context in which the threat was made; the relationship between the defendant and the threat recipient; the recipient's response; and previous threats made by the defendant; and, whether you believe the person making the statement was serious, as distinguished form mere idle or careless talk, exaggeration, or something said in a joking manner.

See Eighth Circuit Model Instruction § 6.18.875C (Interstate Transmission of a Threat), (2023 ed.) (as modified), Title 18, United States Code, Section 875(c); United States v. Dierks, 978 F.3d 585 (8th Cir. 2020). Consequently, the defendant's prior threats and violent behavior are admissible at trial as "previous threats made by the defendant," to

4

highlight the "frequency of the threats," and to provide the "context in which the threat was made."

4) The United States also intends to offer the above prior bad acts to demonstrate that the defendant did not commit the offenses charged in Counts One through Eight of the Indictment by mistake or accident.

## LAW AND ARGUMENT

Federal Rule of Evidence 404(b)(1) prohibits the United States from introducing character evidence to show that a defendant has the propensity to commit a criminal act. Therefore, it is impermissible for the United States to introduce evidence of another crime "to prove [the defendant's] character in order to show that on a particular occasion the [the defendant] acted in accordance with the character." Fed.R.Evid. 404(b)(1). However, under Rule 404(b), it is permissible for the United States to introduce evidence of a defendant's other crimes or acts to demonstrate the defendant's "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." United States v. Steele, 550 F.3d 693, 700 (8th Cir. 2008) citing Fed. R. Evid. 404(b). However, admissibility under Rule 404(b) hinges on whether the misconduct is: "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence; and (4) its probative value . . . [must] not [be] outweighed by any prejudicial impact." Id at 701 citing United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002).

**The defendant's prior threats and assaultive acts are admissible at trial**

<u>Relevant to a Material Issue</u>.  The defendant's prior threats and assaultive acts are relevant to the material issues of whether the defendant made "true threats," intended to enter Fort Union Trading Post National Historic Site to commit a crime therein or damage property, and whether he intended to threaten individuals as alleged in the indictment.

<u>The Prior Offenses are Similar in Kind to the Charged Offenses</u>.

The defendant's prior threats and assaultive acts mirror the conduct charged in the indictment and occurred close in time—within eight months—to the conduct charged in the Indictment. Additionally, the language the defendant used in his prior threats is similar to the language he used to threaten the individuals listed in the indictment.

<u>The Prior Offenses are Supported by Sufficient Evidence</u>. The defendant's prior threats and assaultive acts are supported by the observations of, and written reports made by, law enforcement officers. Additionally, the defendant posted some of these threats on X, a social media site, that were publicly accessible.

<u>The Probative Value of the Defendant's Prior Acts are Not Outweighed by Unfair Prejudice</u>. As stated above, at trial, it will be necessary for the United States to demonstrate that the defendant made "true threats" and acted with reckless intent when he made the threats contained within the Indictment. Therefore, the defendant's prior threats and assaultive acts are admissible to prove that the defendant intended to make "true threats," and had reckless intent when he made the charged threats. <u>See generally</u> <u>United States v. Haukass</u>, 172 F.3d 542, 544 (8th Cir. 1999) (holding that "[w]here intent

6

is an element of the crime charged, evidence of other acts tending to establish that element is generally admissible").

## CONCLUSION

Since the defendant's prior threats and assaultive acts are probative of the defendant's intent, motive, plan, and preparation in the present case, and to rebut the defendant's claim of absence of mistake or accident; at trial, the United States intends to introduce the factual information supporting these acts. The United States will request that the Court issues an appropriate limiting instruction regarding how the factfinder may evaluate this evidence.

Dated: June 24, 2025.

JENNIFER KLEMETSRUD PUHL
Acting United States Attorney

By: /s/ *Jonathan J. O'Konek*
JONATHAN J. O'KONEK
Assistant United States Attorney
ND Bar ID 06821
P.O. Box 699
Bismarck, ND 58502-0699
(701) 530-2420
jonathan.okonek@usdoj.gov
Attorney for United States